**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**NASHIBO GEORGE, Defendant**

Criminal No. F46/1997

Territorial Court of the Virgin Islands

Division of St. Thomas and St. John

June 18, 2004

LOFTON P. HOLDER, ESQUIRE, Assistant Attorney General, Department of Justice, St. Thomas, Virgin Islands, *Attorney for Plaintiff.*

TRESTON E. MOORE, ESQUIRE, Moore Dodson & Russell, St. Thomas, Virgin Islands, *Attorney for Defendant.*

KENDALL, *Judge*

## MEMORANDUM OPINION

(June 18, 2004)

THIS MATTER is before the Court on the Defendant's "Motion for Judgment of Acquittal," and "Conditional Motion for a New Trial" pursuant to Rules 29(c) and 29(d) of the Federal Rules of Criminal Procedure. Defendant files these Motions after having been tried and convicted by a jury of Voluntary Manslaughter in violation of Title 14 V.I.C. § 924. Upon consideration of the Motions and the Government's opposition thereto, Defendant's Motions will be denied.

### I. Facts

Defendant was charged with one (1) count of Murder in the First Degree, in violation of Title 14 V.I.C. §§ 921, 922(a). During the course of trial and by agreement of both parties, an Amended Information was filed which included the offense of Voluntary Manslaughter as Count II in the Information. Defendant was acquitted of Murder in the First Degree and the lesser-included offense of Murder in the Second Degree, but was convicted by jury of Voluntary Manslaughter. Defendant subsequently filed a timely Motion for Judgment of Acquittal.

## II. Motion for Judgment of Acquittal

■ Pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure, a judgment of acquittal must be granted when, viewing the evidence in the light most favorable to the Government, the Court determines as a matter of law that a reasonable jury could not find the Defendant guilty beyond a reasonable doubt. *Walters v. Government*, 172 F.R.D. 165, 171, 36 V.I. 101 (D.V.I. 1997), *aff'd* 135 F.3d 764 (3d Cir. 1997). In making a determination, the Court must decide whether substantial evidence existed at trial upon which a reasonable jury could have reached a verdict of "guilty." *United States v. Fredericks*, 38 F. Supp. 2d 396, 398, 40 V.I. 366 (D.V.I. 1999). A conviction may be based on circumstantial evidence and it "need not be inconsistent with every conclusion save that of guilt, provided it does establish a case from which the jury can find the Defendant guilty beyond a reasonable doubt." *U.S. v. Giuliano*, 263 F.2d 582, 584 (3d Cir. 1959). In sum, it is not the Court's duty to "weigh the evidence or determine the credibility of the witnesses in reviewing a guilty verdict" and the Court "must sustain the verdict if supported by substantial evidence." *Government of the Virgin Islands v. Lima*, 774 F.2d 1245, 1249 (3d Cir. 1985), citing *Glasser v. U.S.*, 315 U.S. 60, 80, 62 S. Ct. 457, 469, 86 L. Ed. 680 (1942).

### A. The Jury Verdict Was Not Against the Weight of the Evidence

■ Defendant contends that there was insufficient evidence as a matter of law on the issue of who stabbed and killed the victim for a jury to find him "guilty" beyond a reasonable doubt. Specifically, Defendant claims that the statements of the Government's witnesses should never have been read to the jury and that without this reading into the record, there would not have been substantial evidence to establish that it was the Defendant who stabbed the victim to convict on Voluntary Manslaughter. In order to show the Defendant's guilt, the Government needed to prove that the Defendant unlawfully killed the victim while in a sudden quarrel or heat of passion, caused by adequate provocation and that the killing occurred in St. Thomas, U.S.V.I. *See*, Title 14 V.I.C. § 924. The evidence presented at trial showed that: (1) the Defendant and the victim were involved in an altercation the night before the stabbing

occurred;[1] (2) the victim died as the result of being stabbed;[2] (3) several witnesses' statements, taken soon after the incident, identified Defendant as the assailant; (4) Defendant was seen with blood on him and fleeing the area of the incident and (5) Defendant gave a Virgin Islands Police Detective information regarding the location of the knife he used in the stabbing.[3] Also, because the jury is charged with evaluating the credibility of the witnesses, they were free to give more weight to the testimony of the Government's witnesses than the testimony of the Defendant's witnesses. *U.S. v. Luma*, 240 F. Supp. 2d 358, 366 (D.V.I. 2002). In viewing all of the evidence in the light most favorable to the Government and given the presumption that the jurors properly weighed the evidence and assessed the credibility of the witnesses, the Court concludes that there was substantial evidence upon which a reasonable jury could have reached a verdict that Defendant was "guilty" beyond a reasonable doubt of Voluntary Manslaughter.

## B. Admission of the Witnesses' Statements

Defendant argues that the Court erred when it allowed the witnesses to read their statements to the jury. Specifically, Defendant claims that the statements were inadmissible under Rules 803(5) and 803(8) of the F.R.E. and that reading the statements to the jury deprived him of his Sixth Amendment Right to Confrontation. In sum, Defendant contends that all of the statements were read to the jury without a proper foundation and were therefore inadmissible as recorded recollections, pursuant to Rule 803(5) of the F.R.E. He further contends that the statements were taken by law enforcement officers in an adversarial investigation and were therefore precluded from use against Defendant pursuant to Rule 803(8) of the F.R.E.

### 1. Rule 803(5): Recorded Recollection

Defendant maintains that the witnesses' statements were not admissible under Rule 803(5) because the requirements of the rule were not satisfied. Rule 803(5) of the F.R.E. creates an exception to the hearsay rule and is based on the belief that as an event is distanced in the

---

[1] This is confirmed by the testimony of Government witness, Joseph Clendenin, Jr. and Defense witness, Leslie Rivera.

[2] This is supported by the testimony of Government witness, Dr. Francisco Landron.

[3] Substantiated by the testimony of Detective Darren Foy.

50

mind, accuracy of the memory may decrease or be lost entirely. The Supreme Court conveyed in *Idaho v. Wright*, 497 U.S. 805, 110 S. Ct. 3139, 111 L. Ed. 2d 638 (1990), that to be admissible under the Confrontation Clause, hearsay evidence used to convict a Defendant must possess indicia of reliability by virtue of its inherent trustworthiness at the time the statements were made, and not by reference to other evidence at trial. *Id.* at 822. The guarantee of trustworthiness can be found in the reliability inherent in a record made while events were still fresh in mind and accurately reflecting them. *See, Hall v. State*, 223 Md. 158, 162 A.2d 751 (1960). To utilize, a party must: (1) provide a memorandum or record; (2) concerning a matter about which a witness once had knowledge; (3) but now has insufficient recollection to enable the witness to testify fully and accurately; (4) shown to have been made or adopted by the witness; (5) when the matter was fresh in the witness's memory; (6) and to reflect that knowledge correctly. Rule 803(5) F.R.E. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party. *Id.*

 At trial, there was substantial evidence to conclude that the statements of the Government's witnesses met the requirements of recorded recollections pursuant to Rule 803(5). With respect to the first requirement, it is indisputable that the statements were all recorded in the form of written accounts. With respect to the second requirement, the Government witnesses were classmates of the Defendant and testified that they were present at school and in the vicinity of the incident. They all had first hand knowledge of the incident they discussed in their statements. With respect to the third requirement, the witnesses all testified that they were present at the time and place of the incident, but claim to have forgotten the event in question. With respect to the fourth requirement, each witness affixed his or her signature to each page of the statement thereby satisfying the requirement that the statement be adopted by the witness. With respect to the fifth requirement, the detailed nature of the statements indicate that they were made at a time when the incident was still fresh in the witnesses' memories. It is uncontroverted that the statements were all taken shortly after the incident.

With respect to the sixth requirement, i.e. whether the statements correctly reflected the witnesses' knowledge at the time of the crime, Defendant contends that the only eyewitness testimony regarding the

51

homicide was adduced from four witnesses viz. (1) Mr. Jermaine Pemberton, (2) Ms. Taffrone Testamark, (3) Mr. Kasim Lewis, and (4) Ms. Kijah Todman. Defendant asserts that the recollections of these four (4) witnesses could not be refreshed by reference to the prior statements attributed to each of them and therefore the statements did not accurately reflect their knowledge at the time. *Defendant's Motion for Judgment of Acquittal,* p. 2.

## a. Mr. Jermaine Pemberton

Defendant challenges the reading of Mr. Pemberton's statement to the Jury by arguing that Mr. Pemberton failed to positively adopt a signature on the statement as his and that he disavowed that the statement correctly reflected his knowledge at the time. *Defendant's Motion for Judgment of Acquittal,* p. 6. Mr. Pemberton testified that he was in school at the time of the incident and that he was a close friend of the victim, but that he could not recall the events of February 1, 1995. The signature on the statement was connected to him through the testimony of one of the detectives present when the statement was taken. Although, Mr. Pemberton stated that he could not say whether the statement was his, he never denied making the statement. The Court had full opportunity to view Mr. Pemberton's demeanor and evaluate his testimony and determined that he was being disingenuous and evasive. The inference is thus warranted that Mr. Pemberton made the statement to the detective at a time when he was capable of recalling the event and that it accurately reflected his knowledge at the time.

## b. Ms. Taffrone Testamark

Defendant contends that the Government failed to lay a proper foundation for the admission of that Ms. Testamark's statement as a past recollection recorded because she had no recollection of her statement and it failed to refresh her recollection. *Defendant's Motion for Judgment of Acquittal,* p. 6. Defendant further asserts that although Ms. Testamark admittedly signed her statement under oath, there was nothing to cross-examine her about except her signature on the statement. *Id.* Ms. Testamark, a student at the time of the incident, testified that she did not recall the events of the day of the stabbing or being interviewed by a police detective soon after. Since Ms. Testamark indicated that she was at school and in the vicinity at the time of the incident, recalled giving a

52

statement to a police officer and identified her signature on each page of the statement, the statement was admitted under Rule 803(5) of the F.R.E. Additionally, it is up to the fact finder to believe some, all, or none of a witness's testimony. The requirement that the statement correctly reflect the witness's knowledge at the time has been met. The Court thus finds that the statement was properly admitted under the past recollection recorded exception to the hearsay rule in light of the foundation laid by the Government.

### c. Mr. Kasim Lewis

Defendant contends that Mr. Lewis' statement was improperly read because the Government failed to establish that the statement was correct at the time it was made. Specifically, Defendant asserts that Mr. Lewis disavowed the content of the document and that his sworn testimony at trial was that someone other than the Defendant stabbed the deceased. *Defendant's Motion for Judgment of Acquittal,* p. 6. However, it is undisputed that Mr. Lewis confirmed making the statement and that he even acknowledged his signature on the document. *Id.* at 6. The Court finds that although Mr. Lewis testified that he was told to make the statement at the time, his prior statement was still admissible pursuant to Rule 803(5).

The Court also finds that Mr. Lewis' statement could have been arguably used to impeach him pursuant to Rule 613 of the F.R.E. The Court in *U.S. v. Rogers,* 549 F.2d 490, 495 (8th Cir. 1976), held that in view of the surrounding circumstances, the trial Court could well have inferred that the witness was fully aware of the content of his prior statement and, therefore, the prior statement was inconsistent with his denial of memory at trial and was admissible to attack the credibility of the witness. The Court in that case also observed that the trial Judge should have considerable discretion to determine whether evasive answers are inconsistent with positive assertions of an extrajudicial nature previously given. *Id.* The foundational prerequisites were present so that Defendant was not prejudiced because Mr. Lewis was afforded an opportunity to explain or deny his prior statements and Defendant had the opportunity to cross-examine Mr. Lewis regarding his recollection of the incident. *Defendant's Motion for Judgment of Acquittal,* p. 6. Also, the fact "that a witness later disowns a prior statement is not, in itself, grounds for it to be simply discarded. Rather, the prior inconsistent

statement presents a credibility issue which is more properly put to the jury." *Williams v. Government of the Virgin Islands*, 271 F. Supp. 2d 696, 707 (D.V.I. 2003). Mr. Lewis not only renounced his prior statement, but insisted that he fully remembered the events of the day of the stabbing. The Court therefore finds that Mr. Lewis' statement, although admissible as a past recollection recorded, could have also been properly admitted as a prior inconsistent statement.

### d. Ms. Kijah Todman

Defendant submits that Ms. Todman's statement was improperly admitted because it did not correctly reflect her memory at the time it was made. Again, the recorded recollection exception to the hearsay rule is applicable in a situation, such as this, where the witness on the stand made a record concerning a matter about which the witness once had knowledge, but at the time of testifying is unable to recall. Ms. Todman was a student and present at the time of the stabbing and testified that she did not recall the events that day. She used the memorandum to attempt to refresh her recollection, but still did not remember the facts or the event and relied on the recitation of the facts or event appearing in the statement. Ms. Todman identified the signature on the statement as hers and did testify that she spoke with a police officer soon after the incident. Again, these facts warrant the inference that Ms. Todman made the statement to the detective at a time when she was capable of recalling the event and that it accurately reflected her knowledge at the time. The Court thus finds that Ms. Todman's statement was properly admitted under the "past recollection recorded" exception to the hearsay rule.

Because the record shows that the Government met the requirements to permit the witnesses to read their statements to the Jury, those statements were properly admitted under the "past recollection recorded" exception to the hearsay rule and did not constitute impermissible hearsay.

### 2. Inapplicability of Title 5 V.I.C § 2512

Defendant contends that the statements should not have been read to the jury because they were not statements under oath and no parent or guardian was present for those giving statements who were all minors at the time of the incident. *Defendant's Motion for Judgment of Acquittal*, p. 6. In making such an argument, Defendant appears to be relying on

Title 5, Section 2512, of the Virgin Islands Code, which addresses the admissibility of a child's statement to law enforcement officers. That section states:

> [n]o admissions or statements of a child made while in custody to law enforcement officers or made ... during the processing of the case shall be admissible in evidence against the child unless the government proves to the court's satisfaction the following: ... (c) that a parent or guardian ... was present at the interrogation when a statement was given.

This statute is not relevant to the instant matter because it applies to a minor who is taken into custody. The witnesses in this case were not arrested and taken into custody and their statements were voluntarily given to law enforcement about the crime they witnessed. Defendant appears to be confusing a custodial interrogation of a minor with a witness, who happens to be a minor, making a statement to law enforcement officers. Based on the facts of this case, there is no support for Defendant's contention that a parent or guardian should have been present for those minors who gave statements to law enforcement in order for their statements to be admissible in Court.

### 3. Witnesses' Statements are not Police Reports Within the Meaning of Rule 803(8) of the Federal Rules of Evidence.

Defendant asserts that pursuant to Rule 803(8) of the F.R.E., it is improper to admit reports of law enforcement officers into evidence. Defendant claims that the statements made by witnesses to police officers regarding the incident are tantamount to records of matters observed by police officers and other law enforcement personnel and are specifically excluded by the public records exception and are not admissible under the past recollection recorded exception to the hearsay rule. To bolster his argument, Defendant cites several cases that, at first blush, appear to support his argument. Upon further scrutiny, however, these cases are distinguishable from the case at bar.

Defendant first relies on *U.S. v. Oates*, 560 F.2d 45 (2d Cir. 1977) as authority for the exclusion of the witnesses' statements. In that case, documentary exhibits purporting to be an official report of a U.S. Customs Service Chemist who analyzed a white powdery substance that was seized from Defendant's companion, were characterized as reports

of "factual findings resulting from an investigation made pursuant to authority granted by law" and as records of "matters observed by police officers and other law enforcement personnel." They were therefore excluded under the "Public Record and Reports" exception to the hearsay rule. *Id.* at 67. That case is distinguishable from the instant matter because the statements were made by the witnesses and set forth matters observed first-hand by them and concern an event about which the witnesses once had knowledge. The witnesses' statements are not police records or reports because they do not set forth "matters observed by police officers and other law enforcement personnel." Thus, because they do not qualify as law-enforcement reports, the public records exception contained in Rule 803(8) of the F.R.E. would not be applicable. Instead, as discussed herein, the statements were properly admitted under the recorded recollection exception to the hearsay rule. *See,* Rule 803(8) of the F.R.E.

In *U.S. v. Pena-Gutierrez,* 222 F.3d 1080 (9th Cir. 2000), also cited by Defendant to support his contention that the witnesses' out of Court statements should be excluded pursuant to Rule 803(8) of the F.R.E., an investigator conducted an interrogation of a deported witness and the Court of Appeals found that the investigator's report containing the witness' statement was inadmissible hearsay. *Id.* at 1086-1087. The Court concluded that the report was an "on-the-scene investigative report of a crime by an INS officer whose perceptions might be clouded and untrustworthy." *Id.* at 1087. The Court in that case also pointed out that the reason for the exclusion is that observations made by police officers at the scene of the crime are not as reliable as observations made by public officials in other cases because of their adversarial nature. *Id.* Again, Defendant is mistaken in his assertion that the statements made by the witnesses to law enforcement officers in the case at bar constitute police reports made as part of adversarial investigations. It is critical to note that there was no custodial interrogation of the witnesses in the instant matter. The witnesses were all interviewed in a non-adversarial setting and their statements were given voluntarily. The statements were not "dependent on some subjective evaluation" made by police officers, thus, Rule 803(8) of the F.R.E. does not apply and the witnesses' statements were properly admitted. *Id.*

## C. Right to Confrontation

### 1. "Testimonial" Statements

Defendant also contends that when a document is received in evidence as past recollection recorded, the net result is that the he is deprived of the opportunity to cross-examine and hence, his right to confrontation is impugned because the witness has no present recollection of the facts. Defendant cites the recent Supreme Court case of *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354, 72 USLW 4229 (2004), to support his argument that none of the witnesses' statements should have been admitted under the Confrontation Clause. In *Crawford,* the Supreme Court abrogated the general rule of *Ohio v. Roberts*, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980), which stated that the Sixth Amendment right to Confrontation did not bar admission of an unavailable witness's statement against a criminal Defendant if the statement bears "adequate 'indicia of reliability,'" a test met when the evidence either falls within a "firmly rooted hearsay exception" or bears "particularized guarantees of trustworthiness." *Crawford, supra,* at 1357 (citing *Ohio v. Roberts, supra,* at 66, 100 S. Ct. 2531). *Crawford* states that where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is confrontation. *Id.* at 1374. "[Testimonial hearsay] applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* In sum, the rule of *Crawford* bars only out-of-Court statements by witnesses that are testimonial, under the Confrontation Clause, unless the witnesses are unavailable and the Defendant had a prior opportunity to cross-examine witnesses, regardless of whether such statements are deemed reliable by Court. *Id.*

█ In the instant matter, the statements at issue did not implicate the right to confrontation. The witnesses' statements were all given voluntarily and were not prompted by any form of interrogation. The witnesses also read and signed their statements after it was prepared. This, of course, happened outside of any judicial or semi-judicial forum. Accordingly, *Crawford* is inapplicable.

Defendant also contends that the witnesses' statements should not have been admitted under *California v. Green*, 399 U.S. 149, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970). In that case, the Supreme Court

recognized that as a constitutional matter, it would be untenable to construe the Confrontation Clause to permit the use of prior testimony to prove the Government's case where the declarant never appears, but it would be another matter to bar testimony where the declarant is present at the trial, exposed to the Defendant and the trier of fact, and subject to cross-examination. *Id.* at 165-166. The Government, in this case, made every effort to introduce its evidence through the live testimony of the witnesses. It produced the declarants at trial, swore them as witnesses who then testified on direct examination, and tendered them for cross-examination. *Id.* at 167. Whether the witnesses then testified in a manner consistent or inconsistent with their prior out-of-court statements, claimed a loss of memory or simply refused to answer, nothing in the Confrontation Clause prohibited the Government from also relying on their prior statements to prove its case against the Defendant. *Id.* at 168. Hence, the Defendant can hardly be deprived of a constitutionally guaranteed right to confrontation when the witnesses testified on direct and cross-examination. Regardless of the quality of their testimony, the requirement of face-to-face confrontation has been met.

■ Furthermore, in *Maryland v. Craig*, 497 U.S. 836, 110 S. Ct. 3157, 111 L. Ed. 2d 666 (1990), the Supreme Court acknowledged that it has never held that "the Confrontation Clause guarantees criminal defendants the *absolute* right to a face-to-face meeting with witnesses against them at trial." *Id.* at 844. Rather, the Court has "repeatedly held that the Clause permits, where necessary, the admission of certain hearsay statements against a defendant despite the defendant's inability to confront the declarant at trial." *Id.* at 847-848. Pointedly, the Supreme Court has recognized a partial overlap between the requirements of the traditional hearsay rule and the Confrontation Clause. *U.S. v. Owens*, 484 U.S. 554, 108 S. Ct. 838, 843, 98 L. Ed. 2d 951 (1988). "When a hearsay declarant is present in trial and subject to unrestricted cross-examination, the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements." *Id.* at 560. The constitutional right to cross-examine an opposing witness, therefore, does not require complete exclusion of all out-of-court statements made by a witness.

In summary, the Court finds that the contested admissions of the out-of-Court statements were proper under the circumstances, and that the

Defendant's constitutional rights under the Sixth Amendment Confrontation Clause were, therefore, sufficiently protected.

## 2. Waiver of the Right—Rule 804(b)(6) Forfeiture by Wrongdoing

Despite the protection that the Confrontation Clause provides for Defendants, a Court can find that the Defendant waived his or her right to cross-examine an opposing witness at trial. *See, United States v. Carlson*, 547 F.2d 1346, 1358 (8th Cir. 1976), *cert. den.* 431 U.S. 914, 97 S. Ct. 2174, 53 L. Ed. 2d 224 (1977). In *Carlson*, a witness testified before a grand jury but refused to testify at trial. F.B.I. agents then testified, based upon conversations with the witness, that his refusal was the result of threats made by Defendant. For this reason, the grand jury testimony of the witness was admitted into evidence. The Court of Appeals affirmed the Trial Court's ruling that Defendant had waived his right of confrontation, saying "the sixth amendment does not stand as a shield to protect the accused from his own misconduct or chicanery." *Id.* at 1359. It concluded that public policy was served by a rule permitting the admission of an out-of-Court statement by a witness who has been intimidated by a Defendant.

Rule 804(b)(6), the "forfeiture by wrongdoing" exception to the general prohibition against hearsay provides that, "if [a] declarant is unavailable as a witness," then "[a] statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness" is "not excluded by the hearsay rule." FED. R. EVID. 804(b)(6). This Rule was a 1997 addition to the Federal Rules of Evidence and codified the already existing common law forfeiture-by-misconduct doctrine. *U.S. v. Rivera*, 292 F. Supp. 2d 827, 830 (E.D. Va. 2003). "Designed to serve the principles of equity, justice, and deterrence, the Rule is rooted in the sensible notion that a defendant who 'wrongfully procures the silence of a witness or potential witness, ... will be deemed to have waived his sixth amendment [confrontation] rights.'" *Rivera, supra*, at 830 (citing *United States v. Dhinsa*, 243 F.3d 635, 652 (2d Cir. 2001). The resulting Court-imposed waiver is rooted in the common law principle that one should not benefit from his or her own wrongdoing. *Id.*

## a. Witness Intimidation

 The Constitution gives the accused the right to Trial at which he should be confronted with the witnesses against him; but if a witness is absent by his own wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away. *Rice v. Marshall*, 709 F.2d 1100, 1102-1103 (6th Cir. 1983). In the instant case, Defendant forfeited or waived his right to confrontation by procuring the witnesses' "unavailability" at trial through intimidation. The Government's witnesses who were in their early teenage years at the time of the crime, testified in one form or another that they did not recall the events that day. The Court finds it preposterous that all of these witnesses could be suffering from Dementia or Altzheimer's disease nine (9) years later. Such selective amnesia could only benefit the Defendant and the Court concludes that it was procured by him in an attempt to obstruct justice. Specifically, it was quite apparent to the Court that most of the Government's witnesses were intimidated or threatened into not testifying. A clear example was the testimony of Mr. Lucien Simon, an eyewitness to the incident. Mr. Simon testified that he was "not in a position to give a truthful statement" and admitted on the stand that he was afraid while casting furtive glances at Defendant. The Defendant would have been able to confront each Government witness at trial had he not taken steps to assure the witnesses' "loss of memory" at trial. "[The Defendant] cannot now be heard to complain that he was denied the right of cross-examination and confrontation when he himself was the instrument of the denial." *United States v. Mayes*, 512 F.2d 637, 651 (6th Cir. 1975). Also, where as here, the witness was unavailable due to his refusal to testify, the reading before jury of his prior police statement in which he strongly implicated Defendant in the crime, did not violate Defendant's right to confrontation, especially where the witness was intimidated into silence by the Defendant or his functionaries and indices of reliability surrounding the evidence were present e.g. the witnesses signed the statement after it was typed. *See, Rice v. Marshall, infra*, at 1104. In sum, the Defendant's misconduct undermined the integrity of the adversary process, the very system that the Confrontation Clause was intended to protect.

Based upon the record, the Court finds that it is reasonable to conclude the Defendant intimidated the witnesses into silence causing them to be unavailable at trial and thereby waived his right to confrontation.

### III. Motion for New Trial

Defendant requests that the Court issue a conditional grant of a Motion for a New Trial, pursuant to F.R. CRIM. P. 29(d), should the Court grant his Motion for Judgment of Acquittal. Having determined that Defendant's Motion for Judgment of Acquittal will be denied, the Court will also deny Defendant's Motion for a New Trial.

### Conclusion

Based upon the foregoing, Defendant's "Motion for Judgment of Acquittal" and "Conditional Motion for New Trial" are DENIED.