**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**JENNISON TOUSSAINT, Defendant**

Case No. ST-10-CR-641
Superior Court of the Virgin Islands
Division of St. Thomas and St. John
November 16, 2011

SABRINA COHEN, ESQ., Assistant Attorney General, U.S. Virgin Islands Department of Justice, St. Thomas, USVI, *Counsel for Plaintiff.*

ROBERT LEYCOCK, ESQ., Territorial Public Defender, Office of the Territorial Public Defender, St. Thomas, USVI, *Counsel for Defendant*.

CARROLL, *Judge*

## AMENDED MEMORANDUM OPINION[1]

### (November 16, 2011)

Defendant Jennison Toussaint is facing trial on charges of aggravated assault and battery, assault in the third degree, and using a dangerous weapon during an assault in the third degree. The charges stem from an incident the People allege occurred on September 10, 2010. According to the People, Toussaint placed a gun against the head of his former girlfirend, Tinashei Phillips, during an argument and then struck her head with the firearm. The People now state that Phillips has left the Territory and is residing in the States. They filed a Motion on May 20, 2011, to admit Phillips's out-of-court statements pursuant to the forfeiture-by-wrongdoing exception.[2] Toussaint opposes the Motion. The Court held a hearing on the Motion on August 8, 2011,[3] to determine whether the statements should be admitted and concludes now that they should.

At the hearing, the People called Corporal Leroy Francis to testify. Corporal Francis stated that he was assigned to investigate the alleged domestic violence incident that took place on September 10, 2010. As part of that investigation, he met with Phillips in the morning of September 11, 2010, and took her statement. At the time she gave her statement, according to Corporal Francis, Phillips appeared agitated, nervous and frightened. She indicated that she did not want to return to her mother's residence because Toussaint knew where she lived. She also stated that Toussaint and his friends had lots of guns and that she was afraid of them.

Sometime after[4] meeting with Corporal Francis, Phillips called him again and reported that she had received threatening text messages from

---

[1] This Amended Memorandum Opinion corrects footnote 17 which is contained in a Memorandum Opinion dated August 23, 2011.

[2] FED. R. EVID. 804(b)(6).

[3] Assistant Attorney General Sabrina Cohen, Esq., appeared on behalf of Plaintiff People of the Virgin Islands. Robert Leycock, Esq., Territorial Public Defender, appeared with and on behalf of Defendant Jennison Toussaint.

[4] Corporal Francis indicated that Phillips contacted him about 5-7 days after the incident.

Toussaint. The text messages were, according to Francis, of a threatening nature. They indicated that the sender knew where Phillips's family, including her five-year old son, lived. Phillips told Corporal Francis that the text messages came from Toussaint, but Corporal Francis did not take any action to verify this fact.

On September 22, 2010, Phillips contacted Corporal Francis again and said that she was at work at Fat Turtle in Yacht Haven Grande. She indicated that she saw one of Toussaint's friends walking back and forth at Yacht Haven and that she was very afraid. Corporal Francis responded to the scene but did not locate the friend. He drove Phillips to her brother's home, as she said she was too afraid to return to her mother's home. On September 23, 2010, Philips called Corporal Francis again and reported that Toussaint had called her and threatened to kill her and her son.

Corporal Francis testified that Phillips obtained a temporary restraining order. The Court takes judicial notice of the fact that, on September 13, 2010, the Family Division of the Superior Court issued a temporary restraining order to Phillips against Toussaint in the case ST-10-DV-186.[5]

Toussaint also testified at the hearing on the Motion. He stated that he has known Phillips's family for a very long time. He stated that Phillips moved to St. Thomas after living in the continental United States for five years and that the two started dating about four or five months before the alleged incident. He denied ever sending anyone to threaten Phillips and denied ever calling her to threaten her. He stated that Phillips actually called him from the States in December 2010 to try and get back together and to ask for money. Toussaint further stated that he does not own a vehicle and never drove in front of the victim's residence.[6]

On cross-examination, when asked whether there was any way to verify that Phillips called Toussaint in December 2010 to get back together, Toussaint responded that he has a pay-as-you-go phone for

---

[5] Corporal Francis did not know if Phillips appeared for a hearing on a permanent restraining order.

[6] The People averred in their Motion that Phillips's father saw Toussaint drive in front of the Phillips's home making threatening gestures. While Phillips's father was in Court on August 5, 2011, the original date of the hearing, he did not appear on August 8, the date to which the hearing was rescheduled. Therefore, the People did not present any evidence regarding Toussaint driving past the family's home.

which there are no records. On cross, he also acknowledged that he sometimes rode in his friend's car but that he never went near the Phillips's home in that car. In addition, Toussaint disclaimed all knowledge of the temporary restraining order.

## DISCUSSION

The parties agree that to succeed on a motion to admit a hearsay[7] statement under the forfeiture-by-wrongdoing exception,[8] the People must prove: (1) that Phillips is unavailable to testify; (2) that she is unavailable as the result of Toussaint's wrongdoing; and (3) that Toussaint intended by his wrongdoing to make Phillips unavailable.[9]

### A. The Standard of Proof is Proof by a Preponderance of the Evidence.

The parties disagree about the standard of proof required.[10] The People urge the Court to adopt a preponderance-of-the-evidence standard, while Toussaint states that the clear-and-convincing-evidence standard is more appropriate. The Court agrees with the People. Cognizant of its requirement to apply the common law, "as generally understood and applied in the United States," as the rules of decision in the cases before it,[11] the Court finds it persuasive that all of the federal courts of appeals to address the issue have decided that the standard is proof by the

---

[7] If the statement was not testimonial, there would be no Confrontation Clause problem, but the People would still need to show that the statement fits within the forfeiture-by-wrong-doing hearsay exception. If it fits within the hearsay exception, it also constitutes an exception to the general rule of confrontation. Therefore, regardless of whether the statement is testimonial, the People need to show that it fits within the forfeiture-by-wrongdoing doctrine.

[8] FED. R. EVID. 804(b)(6). The Federal Rules of Evidence apply to matters before this Court. Act. No. 7161 § 15(b); *see also Terrell v. Coral World*, S. Ct. No. 2010-0058, 2011 V.I. Supreme LEXIS 17, at *11-12 n. 7 (V.I. July 20, 2011) ("[T]he Federal Rules of Evidence . . . have been recently adopted by the Legislature to replace the Uniform Rules of Evidence . . . .").

[9] *Giles v. California*, 554 U.S. 353, 128 S. Ct. 2678, 171 L. Ed. 2d 488 (2008) requiring a showing of intent to make a declarant unavailable).

[10] The parties did not address the standard during oral argument on the Motion but did address it in their papers.

[11] V.I. CODE ANN. tit. 1, § 4 (1995).

preponderance of the evidence.[12] While Toussaint cites *United States v. Thevis*[13] to show that the Fifth Circuit Court of Appeals has adopted a clear-and-convincing standard of evidence, Toussaint fails to note that *Thevis* was overruled in *United States v. Zlatogur*.[14] *Zlatogur* recognized that, after *Thevis*, the Federal Rules adopted the forfeiture-by-wrongdoing exception and the Court of Appeals[15] relied on the Rules' advisory committee notes to determine that the proper standard was one by the preponderance of the evidence.

## B. Phillips is Unavailable to Testify.

■ Applying this standard, the Court finds that the People have proved by a preponderance of the evidence that Phillips is unavailable as a result of Toussaint's wrongdoing, and that Toussaint intended to procure Phillips's unavailability.

■ The People have proved that Phillips is unavailable. A declarant is unavailable if she is absent from the hearing and the statement's proponent cannot procure her attendance by process or other reasonable means.[16] According to the People's evidence, and evident even from Toussaint's testimony, Phillips is now living in the States, outside the Court's subpoena power. In addition, counsel for the People averred that they have not been able to contact or locate the declarant because her phone number has changed. The Court finds that the People have provided sufficient evidence to find by a preponderance of the evidence that Phillips is unavailable.

## C. Toussaint's Wrongdoing Has Caused Phillips to be Unavailable.

■ The People have also proved that Phillips's unavailability resulted from Toussaint's wrongdoing. The People presented evidence that

---

[12] *See Davis v. Washington*, 547 U.S. 813, 833, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006) (taking no position on the proper standard but observing that federal courts "have generally held the Government to the preponderance-of-the-evidence standard).

[13] 665 F.2d 616, 631 (5th Cir. 1982).

[14] *United States v. Zlatogur*, 271 F.3d 1025, 1028 (11th Cir. 2001).

[15] The Fifth Circuit split and part of the Circuit formed the Eleventh Circuit after October 1, 1981.

[16] FED. R. EVID. 804(a).

Phillips was afraid of Toussaint because of his violent behavior towards her on September 10, 2010, and because of a series of text messages and at least one phone call indicating a threat on her life. The Court does not believe that the People proved that Toussaint either knew about or acquiesced in his friend showing up at Phillips's place of work. However, they have proved by a preponderance of the evidence that he called her and sent her text messages. While this evidence came in through hearsay, the Court is permitted to disregard the rules of evidence when making preliminary determinations of facts to reach a decision on the admission of evidence.[17] The Court does not credit Toussaint's self-serving testimony that he did not make any phone calls or send any text messages to her.

### D. Toussaint Intended, by his Wrongful Conduct, to Make Phillips Unavailable.

■ Finally, the People have proved by a preponderance of the evidence that Toussaint intended by his actions to make Phillips unavailable to testify. Toussaint knew as early as September 10, 2010, that Phillips was willing to contact the police about his alleged abuse. In People's Exhibit 1, which is Phillips's police statement, Phillips states that she told Toussaint she would call the police, which caused Toussaint to try and strangle her. Then, on September 13, 2010, she applied for a temporary restraining order, which was granted. While Toussaint denied on the stand even knowing about the temporary restraining order, the Court takes judicial notice of the fact that Superior Court Deputy Marshal Jeavon Sasso reported in a September 20, 2010 Return of Service of Summons making telephonic contact with Toussaint to advise him of the temporary restraining order, but that Toussaint refused to give Sasso information regarding his whereabouts. While the Court cannot take judicial notice of the *contents* of the Return of Service document,[18] nor take the statements

---

[17] FED. R. EVID. 104 (stating that a court, in making preliminary determinations regarding the admissibility of evidence, is not bound by the rules of evidence except those regarding privileges).

[18] FED. R. EVID. 201 (permitting a court to take judicial notice of a fact only if it is not subject to reasonable dispute); *Farrell v. People*, 54 V.I. 600 (V.I. 2011) (finding error in the trial court's judicial noticing of the *contents* of a psychiatrist's report, unless the facts stated therein are themselves judicially noticeable).

therein for their truth, they can be used to impeach Toussaint's testimony that he did not know of the temporary restraining order proceeding.

■ The Court is mindful of the U.S. Supreme Court's statement in *Giles v. California* that "[a]cts of domestic violence often are intended to dissuade the victim from resorting to outside help, and include conduct designed to prevent testimony to police officers or cooperation in criminal prosecutions."[19] "Earlier abuse," the Supreme Court found, "or threats of abuse, intended to dissuade the victim from resorting to outside help would be highly relevant to [the forfeiture doctrine] inquiry, as would evidence of ongoing criminal proceedings at which the victim would have been expected to testify."[20]

Here, there is no evidence that Toussaint threatened Phillips before the alleged assault on September 10, 2010. During the assault, however, she informed him she was going to cell the police and he proceeded to strangle her. Within days of making a police report, she received text messages threatening her life and the life of her five-year old son. The threats stated that Toussaint knew where Phillips and her family lived. On September 13, 2010, she received a temporary restraining order. Not long thereafter, Toussaint called her and threatened her life and that of her son again. Phillips was so afraid for her life that she repeatedly reached out to the police and moved into her brother's house. The evidence supports the inference that she was so afraid of Toussaint, she ultimately left the Territory and changed her phone number.

Like the Supreme Court of Missouri in *State v. McLaughlin*[21] and Court of Appeals of Wisconsin in *State v. Baldwin*,[22] the Court decides that this evidence is sufficient to determine that Toussaint intended by his actions to make Phillips unavailable[23] In *McLaughlin*, the Supreme Court of Missouri found it relevant that the victim suffered threats and abusive conduct during the time that the victim was proceeding with a criminal case against the defendant. It found that the threats to her by the defendant

---

[19] *Giles*, 554 U.S. at 376.

[20] *Id.*

[21] 265 S.W.3d 257 (Mo. 2008).

[22] 2010 WI App 162, 330 Wis. 2d 500, 794 N.W.2d 769 (Wis. Ct. App. 2010).

[23] Both *McLaughlin* and *Baldwin* were decided after the Supreme Court issued its opinion in *Giles*. Therefore, they apply the *Giles* Court's requirement to show the intent of a defendant as to the declarant's unavailability.

while she was pursuing both a criminal case and civil protection proceedings, constituted "ample evidence" of the defendant's intent to make the victim unavailable. Likewise, in *Baldwin*, the Court of Appeals of Wisconsin acknowledged that while *Giles* did not dictate what types of evidence would be permitted to demonstrate intern., acts of violence or threats while a victim was pursuing a criminal case could be highly relevant to a finding of forfeiture. While the threatening conduct concurrent with the initiation of a criminal proceeding might not be enough to show intent beyond a reasonable doubt, the Court finds that it is enough to meet the preponderance of the evidence standard required for admission of out-of-court statements.

## CONCLUSION

■ A defendant's right to confront his accusers is a fundamental principle of our system of justice; it is not to be lightly discarded. However, that same system of justice cannot countenance a defendant benefiting from his own wrongdoing.[24] The People have proven by a preponderance of the evidence that Toussaint repeatedly threatened Phillips, the main witness in this case against him, with the intent to prevent her from pursuing this matter, and that as a result of those threats, Phillips has fled the Territory and is unavailable to testify. For that reason, Phillips's out-of-court statements will be admitted.

---

[24] *Gov't v. George*, 47 V.I. 46, 60 (V.I. Terr. Ct. 2004) ("[T]he Defendant's misconduct undermined the integrity of the adversary process, the very system that the Confrontation Clause was intended to protect.").